## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **MONUMENT PEAK** | § | |
| **VENTURES, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | **CASE NO. 2:25-cv-521** |
| **v.** | § | |
| | § | |
| **OPEN TEXT CORPORATION,** | § | **JURY TRIAL** |
| **Defendant.** | § | |
| | § | |

## COMPLAINT AND JURY DEMAND

Plaintiff Monument Peak Ventures, LLC ("MPV") brings this action against

Open Text Corporation ("OpenText") for infringement of U.S. Patent Nos.

8,024,311; 8,643,746; 8,665,345; and 9,013,604 and alleges the following:

### THE PARTIES

1.     Monument Peak Ventures, LLC, is a Texas Limited Liability

Company with its principal place of business in Allen, Texas.

2.     Defendant OpenText is a Canadian corporation with a principal place

of business at 275 Frank Tompa Drive, Waterloo, Ontario, N2L 0A1, Canada.

3.     OpenText manufactures, sells, offers for sale, and/or licenses in the

United States, and/or imports into the United States computer software products

including OpenText's Knowledge Discovery Platform (IDOL MMP), Media Server, Rich Media Analytics, Media Management and Analysis Platform (MMAP), IDOL Media Server, and products, software, and services that provide similar functionality, all of which infringe MPV's patent claims.

4.     OpenText sells the infringing products for distribution throughout the United States and to customers in this district.

## JURISDICTION AND VENUE

5.     MPV brings this action for patent infringement under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c)(3) which provides that "a defendant not resident in the United States may be sued in any judicial district."

7.     OpenText is subject to this Court's specific and general personal jurisdiction pursuant to the Texas Long-Arm Statute and consistent with due process, in view of its substantial business in Texas and in this judicial district including: (a) its infringing activities alleged in this complaint by which Defendant purposefully avails itself of the privilege of conducting business

activities in this state and district, and thus, submits itself to the jurisdiction of this Court; and (b) regularly doing or soliciting business, contracting with and engaging in other persistent conduct targeting residents of Texas and this district, or deriving substantial revenue from goods and services offered for sale, sold, and imported to and targeting residents of Texas and this district directly and through or in concert with intermediaries, agents, distributors, importers, customers, subsidiaries and/or consumers.

8.    OpenText transacts business in this judicial district and has committed acts of infringement in this judicial district.

9.    OpenText's presence and conduct directed to residents of Texas and into this district is intended to further and advance the development, design, manufacture, importation, distribution, sale, and use (including by inducement) of infringing OpenText products in Texas and in this district.

10.    OpenText directly or through intermediaries including authorized distributors makes, uses, offers for sale, imports, sells, advertises, or distributes products and services and inducing infringement of MPV's patents in the United States, in Texas, and in this district.

11.    OpenText conducts its business of marketing, distributing, deploying,

and selling products and services in Texas and in this district through its agents, representatives, affiliates, related entities, partners, distributors, and retailers.

12.    OpenText continuously and systematically solicits business and contracts with residents of Texas and this district.

13.    As one example, OpenText contracted with the Austin-based Texas Department of Information Resources for "Software Products and Maintenance" among other things (Contract #DIR-CPO-4405).  The contract includes a price list for software and maintenance that includes the infringing OpenText Knowledge Discovery Platform.  https://www.opentext.com/en/media/price-list/software-products-and-maintenance-tx-department-of-information-resources-contract-dir-cpo-4405-price-list-en.pdf.

14.    This Court has personal jurisdiction over OpenText, directly and/or indirectly via the activities of OpenText and its intermediaries, agents, related entities, affiliates, distributors, importers, customers, subsidiaries, or consumers. Alone and in concert with these entities, OpenText has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas.

15.    The Court's exercise of personal jurisdiction over OpenText is also appropriate under Federal Rule of Civil Procedure 4(k)(2) because MPV's patent infringement claims arise under federal law; OpenText is not subject to the jurisdiction of the courts of general jurisdiction of any state; and exercising jurisdiction over OpenText comports with due process under the U.S. Constitution.

## MONUMEN PEAK VENTURES

16.    MPV owns a portfolio of patents invented by the Eastman Kodak Company.  Since acquiring the Kodak portfolio, MPV has promoted adoption of technologies claimed in Kodak portfolio and has entered into license agreements with over thirty companies.

17.    MPV asserts that OpenText infringes, directly and indirectly, certain claims of U.S. Patent Nos. 8,024,311 (the "'311 Patent"); 8,643,746 (the "'746 Patent"); 8,665,345 (the "'345 Patent"); and 9,013,604 (the "'604 Patent") (the "MPV Asserted Patents").

## ASSERTED MPV PATENTS

18.    The MPV Asserted Patents claim inventions born from the ingenuity of the Eastman Kodak Company ("Kodak"), an iconic American imaging technology company that dates back to the late 1800s.

19.    The first model of a Kodak camera was released in 1888.



20.    In 1935 Kodak introduced "Kodachrome," a color reversal stock for movie and slide film.



21.    In 1963 Kodak introduced the Instamatic camera, an easy-to-load point-and-shoot camera.

22.    By 1976 Kodak was responsible for 90% of the photographic film and

85% of the cameras sold in the United States.

23.    At the peak of its domination of the camera industry, Kodak invented

the first self-contained digital camera in 1975.



24.    By 1986 Kodak had created the first megapixel sensor that was

capable of recording 1,400,000 pixels.

25.    While innovating in the digital imaging space Kodak developed an

immense patent portfolio and extensively licensed its technology in the space.

26.     In 2010, Kodak received $838,000,000 in patent licensing revenue.

27.     As part of a reorganization of its business, Kodak sold many of its patents to some of the biggest names in technology including Google, Facebook, Amazon, Microsoft, Samsung, Adobe Systems, HTC and others for $525,000,000.

28.     While scores of companies have paid to license the Kodak patent portfolio owned by MPV, OpenText has refused to recognize MPV's patents and license the inventions it has profited from using.

## THE ACCUSED PRODUCTS

29.     The term "Accused Products" include OpenText products that provide for feature recognition or extraction from images or video including OpenText's Knowledge Discovery Platform (IDOL), the IDOL Media Management and Analytics Platform (IDOL MMP), Media Server/IDOL Media Server, Rich Media Analytics, the Media Management and Analysis Platform (MMAP), and variously other predecessor, related, and similar products, software, and services that provide substantially similar functionality.  The Accused Products also include similar products offered by Micro Focus International plc ("Micro Focus"), a company acquired by OpenText in 2023, including the Media Management and Analysis Platform (MMAP), IDOL MMP, Media Server, IDOL Media Server, and products, software, and services that provide substantially similar functionality.

30.     Micro Focus developed a suite of analytical tools for extracting meaningful information from images and video, and the Media Server is a critical part the toolset.

## Media Server

Images and video are examples of unstructured information that represent a vast quantity of data. Media Server enables you to maximize the utility of this data by extracting meaningful information about its content.

For example, Media Server can:

- run optical character recognition, to read text in a scanned document or subtitles in a video.
- identify a person who appears in an image or video by matching their face to a database of known faces.
- identify logos and other objects when they appear in images and video.
- identify the exact time of a scene change in video.
- determine whether a video contains speech, and convert the speech into text.

You can deploy Media Server for broadcast monitoring purposes, to identify when individuals or organizations appear in television broadcasts and extract information about these appearances. You might also use Media Server to catalog an existing archive of audio and video clips.

In security and surveillance deployments, Media Server can help security personnel. Human operators can become overwhelmed by the amount of data available from CCTV cameras. Media Server reduces the operator's workload with automatic processing, such as reading the number plates on vehicles and automatically identifying suspicious events.

Media Server can transform the metadata that it extracts into many output formats, and send the data to many systems.

Media Server can be used to analyze images, video, and audio for a custom application that you develop. You can also use Media Server as part of a larger IDOL deployment, to run analysis on files that your connectors extract from your organization's data repositories, from web sites, and from social media. If you index information from Media Server into IDOL Server, you can use IDOL to search within your media. Searches will return images such as scanned documents that contain the search terms. You can search ingested video for specific events, such as the appearance of a particular speaker or discussion of a particular subject. If you are running Media Server for broadcast monitoring you can run sentiment analysis to determine whether the appearance of an individual or

IDOL Media Server, Software Version 12.12 Administration Guide, June 2022, p. 19 ("Media Server Guide") (*available at* https://www.microfocus.com/documentation/idol/IDOL_12_12/MediaServer_12.12_Documentation/Guides/pdf/MediaServer_12.12_admin_en.pdf).

      31.     The Media Server provides functionality to identify people in an image or video stream.

---

# Chapter 11: Face Detection, Recognition, and Demographics

Media Server can run several types of face analysis including face detection and face recognition.

---

# Introduction

*Face Detection* detects faces and returns their location.

*Face Recognition* identifies people by comparing detected faces to faces in your training database.

After detecting faces, Media Server can also:

- estimate demographic information such as age, gender, and ethnicity.
- report information such as the facial expression, whether the person's eyes are open or closed, and whether the person is wearing spectacles.

**NOTE:** Media Server can analyze faces for demographics and facial expression only when the person is looking directly at the camera.

You can run face detection and face analysis operations out-of-the-box. To run face recognition, you must train Media Server using images of people that you want to identify. For information about how to train Media Server, see Train Media Server to Recognize Faces, on page 146.

---

Media Server Guide at p. 144.

32.    On or about August 25, 2022, OpenText announced that it reached an agreement to purchase Micro Focus.  *See* https://investors.opentext.com/press-releases/press-releases-details/2022/OpenText-to-Acquire-Micro-Focus-International-plc/default.aspx.  OpenText announced on January 31, 2023, that it had closed the acquisition of Micro Focus.

33.    OpenText touted the software and services that it purchased from Micro Focus, highlighting the Media Server and its facial recognition technology.



## Visual Server

| Type | Function | Description |
|---|---|---|
| Image | Barcode | Detect and read QR codes |
| Video/Image | FaceDetect | Detect faces |
| Video/Image | Demographics | Obtain demographic information such as age, gender, and ethnicity for detected faces |
| Video/Image | FaceRecognize | Run face recognition on detected faces |
| Video/Image | FaceState | Obtain additional information, such as facial expression, about detected faces |
| Video | Keyframe | Identify keyframes |
| Video/Image | Object | Recognize known objects in video |
| Video/Image | ObjectClas | Recognize known object classes in video |
| Video/Image | OCR | Run intelligent scene analysis to identify important |
| Video | SceneAnalysis | Run intelligent scene analysis to identify important events |
| Video/Image | NumberPlate | Detect and read license plates on vehicles, including the ability to Identify color and make of vehicle |

## Surveillance Server

| Source | Function | Description |
|---|---|---|
| Camera | SceneAnalysis | Run intelligent scene analysis to identify important events |
| Camera | NumberPlate | Detect and read license plates on vehicles, including the ability to Identify color and make of vehicle |
| Camera | FaceDetect | Detect faces |
| Camera | Demographics | Obtain demographic information such as age, gender, and ethnicity for detected faces |
| Camera | FaceRecognize | Run face recognition on detected faces |

IDOL MMAP, Media Management and Analytics Platform Brochure, OpenText (2023) (*available at* https://www.opentext.com/assets/documents/en-US/pdf/idol-mmap-brochure-en.pdf).

**NOTICE OF MPV ASSERTED PATENTS**

34.     MPV contacted Micro Focus on February 20, 2023, regarding licensing the MPV Asserted Patents.  Micro Focus subsequently received notice of the three of the four MPV Asserted Patents by February 24, 2023.  Micro Focus and its acquirer OpenText thus received notice that it infringed U.S. Patent Nos. 8,643,746; 8,665,345; and 9,013,604 no later than February 24, 2023.  OpenText received notice of U.S. Patent No. 8,024,311 no later than the filing date of this complaint.

**COUNT 1**
**INFRINGEMENT OF U.S. PATENT NO. 8,024,311**

35.     MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

36.     MPV is the owner, by assignment, of U.S. Patent No. 8,024,311.  The '311 Patent was issued by the United States Patent and Trademark Office on September 20, 2011.

37.     As the owner of the '311 Patent, MPV holds all substantial rights in and under the '311 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

38.     The '311 Patent is valid, enforceable and was duly issued in full

compliance with Title 35 of the United States Code.

39.    MPV alleges that OpenText has infringed and continues to infringe at least claim 1 of the '311 Patent by making, using (including its own testing), offering to sell, selling, distributing, licensing and/or importing the Accused Products and all other similar products that infringe the '311 Patent without authorization or license as exemplified below.

40.    The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '311 Patent and feature structures and/or functionality as shown below.

41.    OpenText has used and tested the Accused Products in the United States.

42.    OpenText thus has infringed and continues to infringe the '311 Patent.

43.    OpenText's activities have been and continue without authority of license under the '311 Patent.

44.    OpenText's users, customers, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using, making, selling, offering for sale, licensing, and/or importing the Accused Products according to their normal

and intended use.

45.    The Accused Products satisfy each and every element of each asserted claim of the '311 Patent either literally or under the doctrine of equivalents.

46.    Claim 1 recites an embodiment of the claimed subject matter:

A method implemented at least in part by a data processing system, the method for identifying media assets that are potentially relevant to contextual information, and the method comprising the steps of:

> receiving, by the data processing system, the contextual information, wherein the received contextual information comprises a first set of contextual information and a second set of information, the second set being received after the first set;
>
> identifying a chosen event based at least upon an analysis of the contextual information;
>
> identifying a set of media assets based at least upon an analysis of the identified event, wherein the step of identifying the set of media assets comprises:
>
>> identifying a superset of media assets associated with the chosen event based at least upon an analysis of the first set of

contextual information at a time when the second set of contextual information has not yet been received, the superset of media assets comprising more media assets than the set of media assets; and

identifying the set of media assets from the superset of media assets based at least upon an analysis of the second set of contextual information;

associating, in a processor-accessible memory system, at least some of the contextual information with the chosen event, or at least one asset in the set of media assets, or both the chosen event and at least one asset in the set of media assets.

47. The Accused Products perform a method implemented at least in part by a data processing system, the method for identifying media assets that are potentially relevant to contextual information.

48. For example, the Accused Products (*e.g.,* a data processing system) utilizes a method for identifying files (*e.g.,* media assets) that are potentially relevant to the contextual information of a given search.



https://www.youtube.com/watch?v=ECFfAvp7Kns.

49.     The Accused Products perform a method that includes receiving, by the data processing system, the contextual information, wherein the received contextual information comprises a first set of contextual information and a second set of information, the second set being received after the first set and includes identifying a chosen event based at least upon an analysis of the contextual information.

50.     For example, the Accused Products (*e.g.*, the data processing system) receive the search filter information (*e.g.*, the contextual information), wherein the

received information comprises, *e.g.*, the time frame (*e.g.*, the first set of contextual information) and the person who appeared in the medium (*e.g.*, a second set of information), where the person's identity is received after the time frame. For example, the time frame may be last week, and person who appeared may be Donald Trump. OpenText identifies, for example, Donald Trump appearing on TV during the previous week (*e.g.*, a chosen event) based at least upon an analysis of the search filter criteria (*e.g.*, contextual information).



https://www.youtube.com/watch?v=ECFfAvp7Kns.

51.    The Accused Products perform a method that includes identifying a set of media assets based at least upon an analysis of the identified event.

52.    For example, the Accused Products identify visual media files (*e.g.*, media assets) based at least upon an analysis of the TV appearances of Donald Trump last week (*e.g.*, the chosen event).



https://www.youtube.com/watch?v=ECFfAvp7Kns.

    53.    The Accused Products perform a method that includes identifying a superset of media assets associated with the chosen event based at least upon an analysis of the first set of contextual information at a time when the second set of contextual information has not yet been received, the superset of media assets comprising more media assets than the set of media assets.

    54.    For example, the Accused Products identifies TV clips from last week (i.e., superset of media assets) based on which time frame is chosen (*e.g.*, first set of contextual information) when the identity of person appearing has not yet been

chosen (*e.g.*, second set of contextual information not yet received), where the total number of TV clips from last week (*e.g.*, superset of media assets) is greater than the number of such clips in which Donald Trump appears (*e.g.*, the set of media assets).



https://www.youtube.com/watch?v=ECFfAvp7Kns.

     55.    The Accused Products perform a method that includes identifying the set of media assets from the superset of media assets based at least upon an analysis of the second set of contextual information.

     56.    For example, the Accused Products identify TV clips from the

previous week in which Donald Trump appears (*e.g.*, the set of media assets) from

the larger group of TV clips from the previous week (*e.g.*, superset of media assets)

based upon an analysis of Donald Trump's appearance (*e.g.*, a second set of

contextual information).



https://www.youtube.com/watch?v=ECFfAvp7Kns.

    57.    The Accused Products perform a method that includes associating, in

a processor-accessible memory system, at least some of the contextual information

with the chosen event, or at least one asset in the set of media assets, or both the

chosen event and at least one asset in the set of media assets.

58.     For example, the Accused Products associate the time frame and person appearing (*e.g.*, the contextual information) with Donald Trump appearing on TV during the previous week (*e.g.*, the chosen event), and TV clips from the previous week in which Donald Trump appeared (*e.g.*, one asset in the set of media assets).



https://www.youtube.com/watch?v=ECFfAvp7Kns.

59.     OpenText was provided with notice of the '311 Patent and how it infringes at least claim 1 no later than the filing date of this Complaint. OpenText's knowledge of the '311 Patent, which covers operating the Accused

Products used as intended such that all limitations of the asserted claims of the '311 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products that directly infringes the '311 Patent, or, at the very least, rendered OpenText willfully blind to such infringement.

60.    OpenText has, since at least as early as the filing date of this Complaint, known or been willfully blind to the fact that the third-party infringers' use, manufacture, sale, offer for sale, and/or importation of the Accused Products directly infringes the '311 Patent.

61.    With knowledge of or willful blindness to the fact that the third-party infringers' use, manufacture, sale, offer for sale, license and/or importation of the Accused Products in their intended manner such that all limitations of the asserted claims of the '311 Patent are met directly infringes the '311 Patent, OpenText has actively encouraged the third-party infringers to directly infringe the '311 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the accused products by, for example: marketing the Accused Products with facial recognition and feature extraction capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the facial recognition and feature extraction functionalities; and providing technical assistance to the

third-party infringers during their continued use of the Accused Products such as by, for example, publishing instructional information on the OpenText websites (including, without limitation, the knowledge center, instructional videos and on the OpenText branded website) directing and encouraging third-party infringers how to make and use the facial recognition and feature extraction features of the Accused Products.

62.     OpenText induces the third-party infringers to infringe the asserted claims of the '311 Patent by directing or encouraging them to operate, make, sell, offer to sell, license, and/or import the Accused Products which satisfy all limitations of the asserted claims of the '311 Patent.  OpenText advertises and promotes the facial recognition and feature extraction features of the Accused Products and encourages the third-party infringers to operate them in an infringing manner. OpenText provides technical assistance directing and instructing third parties how to operate the Accused Products by, for example, publishing instructional materials, videos, knowledge center resources, how-to guides, troubleshooting, manuals, and user guides.

63.     In response, the third-party infringers acquire, make, sell, offer to sell, license, operate, and/or import the Accused Products in an infringing manner.

64.     OpenText specifically intends to induce, and did induce, the third-party infringers to infringe the asserted claims of the '311 Patent, and OpenText knew of or was willfully blind to such infringement.

65.     OpenText advises, encourages, and/or aids the third-party infringers to directly infringe by using the facial recognition and feature extraction features of the Accused Products.  With knowledge or willful blindness to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of asserted claims of the '311 Patent are met directly infringes the '311 Patent, OpenText actively encourages and induces the third-party infringers to directly infringe the '311 Patent by making, using, testing, selling, offering for sale, importing and/or licensing said Accused Products, and by, for example: marketing the Accused Products to the third-party infringers; supporting and managing the third-party infringers' use of the Accused Products; and providing technical assistance to the third-party infringers during their continued use of the Accused Products by, for example, publishing the following instructional information on its website directing third-party infringers how to make and use the Accused Products to infringe the asserted claims of the '311 Patent.

66.    OpenText has induced and continues to induce infringement of the '311 Patent under 35 U.S.C. § 271(b).

67.    OpenText has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the Accused Products that are especially made and adapted—and specifically intended by OpenText—to be used as components and material parts of the inventions covered by the '311 Patent.  For example, the Accused Products include facial recognition and feature extraction features identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the accused products.

68.    OpenText also knew that the accused products are operated in a manner that practices each asserted claim of the '311 Patent.

69.    The facial recognition and feature extraction features are specially made and adapted to infringe the asserted claims of the '311 Patent.

70.    The facial recognition and feature extraction features are not a staple article or commodity of commerce, and, because the functionality was designed to work with the Accused Products solely in a manner that is covered by the '311

Patent, it has no substantial non-infringing use. At least by MPV's notice of OpenText's infringement, based upon the foregoing facts, OpenText knew of or was willfully blind to the fact that such facial recognition and feature extraction functionality was especially made and adapted for—and was in fact used in—the accused products in a manner that is covered by the '311 Patent.

71.    OpenText has contributorily infringed and continues to contributorily infringe the asserted claims of the '311 Patent under 35 U.S.C. § 271(c).

72.    OpenText's continuing acts of infringement of the '311 Patent since this complaint was filed are carried out with knowledge of the '311 Patent and how the Accused Products infringe them.  Rather than take a license to the '311 Patent, OpenText's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

73.    OpenText's acts of direct and indirect infringement have caused and continue to cause damage to MPV for which MPV is entitled to recover damages sustained as a result of OpenText's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 2
## INFRINGEMENT OF U.S. PATENT NO. 8,643,746

74.    MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

75.    MPV is the owner, by assignment, of U.S. Patent No. 8,643,746.  The '746 Patent was issued by the United States Patent and Trademark Office on February 4, 2014.

76.    As the owner of the '746 Patent, MPV holds all substantial rights in and under the '746 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

77.    The '746 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

78.    OpenText has infringed and continues to infringe at least claim 16 of the '746 Patent by making, using (including its own testing), offering to sell, selling, distributing, licensing and/or importing the Accused Products and all other similar products that infringe the '746 Patent without authorization or license as exemplified below.

79.    The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '746 Patent and feature structures and/or

functionality as shown below.

80.     OpenText has used and tested the Accused Products in the United States.

81.     OpenText has infringed and continues to infringe the '746 Patent.

82.     OpenText's activities were without authority of license under the '746 Patent.

83.     OpenText's users, customers, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using, making, selling, offering for sale, licensing, and/or importing the Accused Products according to their normal and intended use.

84.     The Accused Products satisfy each and every element of each asserted claim of the '746 Patent either literally or under the doctrine of equivalents.

85.     Claim 16 recites an embodiment of the claimed subject matter:

A method comprising:

receiving a video sequence including a time sequence of image frames;

receiving a designation with respect to a reference image, wherein

the reference image contains a particular person;

using a data processor to automatically analyze the image frames using a person recognition algorithm to identify a subset of the image frames that contain the particular person;

forming a video summary including fewer than all of the image frames in the video sequence, wherein the video summary includes at least part of the identified subset of image frames containing the particular person;

storing the received video sequence in a storage memory; and storing the video summary in the storage memory as a separate summary digital video file.

86.     The Accused Products perform a method that includes receiving a video sequence including a time sequence of image frames.  For example, the Accused Products receive captured video (*e.g*., "video sequence") that includes a time sequence of image frames.



Media Server Guide at p. 22; s*ee also* Media Server Help (*available at*

https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Getting_Started/Introduction/Architecture.htm).

## Ingest Media

*Ingestion* is the process of bringing media into Media Server so that it can be processed and analyzed. Media Server can ingest the following media:

- image files.
- office documents such as PDF files that contain embedded images.
- video files.
- video from IP streams. Many devices, for example IP cameras, network encoders, and IPTV devices can produce IP streams.
- video from cameras and third-party video management systems.

Media Server Guide at p. 20.



https://www.youtube.com/watch?v=E3XPHol6H2I&t=72s.



https://www.youtube.com/watch?v=E3XPHol6H2I&t=72s.



https://www.microfocus.com/documentation/idol/IDOL_23_3/MediaServer_23.3_
Documentation/Help/Content/Operations/Ingest/VideoStream.htm.

87.    In normal operation, the Accused Products receive a designation with respect to a reference image, wherein the reference image contains a particular person.  For example, the Media Server receives a trained face image (*e.g.,* "reference image") where the trained face image contains an image of particular person.

## Introduction

*Face Detection* detects faces and returns their location.

*Face Recognition* identifies people by comparing detected faces to faces in your training database.

## Train Media Server to Recognize Faces

To run face recognition you must train Media Server by providing images of people that you want to identify. When you run face recognition, Media Server compares the faces it detects in the image or video to the faces that you added during training.

Media Server Guide at p. 345, 146; Media Server Help (*available at* https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Operations/Analyze/Face_overview.htm; https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Training/Face_Introduction.htm?Highlight=face%20detection%20detects%20faces).

88.    In normal operation, the Accused Products use a data processor to automatically analyze the image frames using a person recognition algorithm to identify a subset of the image frames that contain the particular person.  For

example, the Media Server uses a data processor to analyze the image frames with a face recognition algorithm (*e.g.,* "person recognition algorithm") to identify the image frames containing the particular person.



Media Server Guide at 146; Media Server Help (*available at* https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Training/Face_Introduction.htm?Highlight=face%20detection%20detects%20faces).

Media Server Guide at p. 96; Media Server Help (available at
https://www.microfocus.com/documentation/idol/knowledge-discovery-
25.2/MediaServer_25.2_Documentation/Help/Content/Operations/Config_Overvie
w_AnalysisTracks.htm?Highlight=%22following%20diagram%20shows%20how
%20face%20detection%20creates%20records%22).

89.      In normal operation, the Accused Products form a video summary

including fewer than all of the image frames in the video sequence, wherein the

video summary includes at least part of the identified subset of image frames

containing the particular person.  For example, the Media Server forms records

(*e.g.,* "video summary") including fewer than all of the image frames from the

captured video, where at least part of the frames contain the particular person.

Media Server Guide at p. 96; Media Server Help (available at https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Operations/Config_Overview_AnalysisTracks.htm?Highlight=%22following%20diagram%20shows%20how%20face%20detection%20creates%20records%22).

> Analysis tasks can produce many different output tracks but, regardless of which track they belong to, records that relate to the same event always have the same ID.
>
> - *Result* tracks contain records that summarize the analysis results for complete event. Each record can span many video frames and has a start time, peak time, end time, duration, and an ID. You can use the ID to find other records that are related to the same event. The purpose of a result track is to provide a summary of the analysis results that is suitable to output from Media Server. Media Server does not generate a record in a result track until an event has finished, because these records represent an entire event from beginning to end.
>
>   Example: A face detection result track contains a single record for each detected face. Each record has a different ID.
>
>   Example: A face recognition result track contains zero or more records for each detected face (there can be multiple recognition results when there are several matches that exceed the recognition threshold). Face recognition results inherit their ID from the detected face, so all of the recognition results for the same detected face have the same ID.
>
> - *ResultWithSource* tracks are similar to result tracks because the records represent complete events. The records are the same as records in the result track, except that each record also includes the video frame that produced the best analysis result. For example, when you run face recognition the video frame with the highest confidence score is added to the record. This frame corresponds to the "peak" timestamp.

Media Server Guide at 95; Media Server Help (available at https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Operations/Config_Overview_AnalysisTracks.htm?Highlight=%22Analysis%20tasks%20can%20produce%20many%22).

90.    In normal operation, the Accused Products store the received video sequence storage memory and store the video summary in the storage memory as a separate summary digital video file.  For example, the Media Server stores a captured video in the Connector Framework Server (*e.g.,* "storage memory") and the records as a separate summary digital video file (*e.g.,* blue rectangle).

## The IDOL Platform

Media Server is one of the components in the *Intelligent Data Operating Layer* (IDOL). You can use Media Server independently or as part of a larger IDOL system.

You can use Media Server independently by writing a custom application that communicates with Media Server. Media Server accepts commands over HTTP and returns responses in XML format. You can use the Autonomy Content Infrastructure (ACI) Client API to develop a custom application.

In a typical IDOL deployment, IDOL Connectors retrieve information from your data repositories for indexing into IDOL Content. You can configure IDOL NiFi Ingest or your Connector Framework Server (CFS) to send images and video to Media Server and request one or more analysis operations. Media Server returns the results of the analysis operations to NiFi Ingest or CFS, which enriches the documents being ingested.

Media Server Guide at 23.



For example, a repository might contain video clips that you want to search or categorize. You could configure NiFi Ingest to send the video to Media Server and request analysis such as face detection, face recognition, object recognition, keyframe extraction and optical character recognition. Media Server returns information about the video content to NiFi Ingest, which might perform additional operations, such as Eduction, before indexing the information into an IDOL index.

Media Server Guide at 24.

## Introduction

Media Server can encode the video it ingests and write the video to files, to a stream, or to a rolling buffer.

There are several reasons for encoding video:

- If you are ingesting video from a stream, you can encode the video for playback at a later time. If your analysis tasks detect interesting events in the video, you might want to review those events.
- You can choose the size and bit rate of the encoded video. If you are analyzing sources such as high-definition television broadcasts, you might want to reduce the size and bit rate of the video for storage and streaming to users when they search for clips.

Media Server Guide at 299.



Media Server Guide at p. 96; Media Server Help (*available at*
https://www.microfocus.com/documentation/idol/knowledge-discovery-
25.2/MediaServer_25.2_Documentation/Help/Content/Operations/Config_Overvie
w_AnalysisTracks.htm?Highlight=%22following%20diagram%20shows%20how
%20face%20detection%20creates%20records%22).

## Analysis Task Output Tracks

The events that occur in video usually span many frames. For example, a person, object, or logo might appear on screen and remain there for several minutes. Media Server analyzes video frame by frame, but many analysis engines track events across frames because analyzing multiple frames can improve accuracy.

Analysis tasks can produce many different output tracks but, regardless of which track they belong to, records that relate to the same event always have the same ID.

- *Result* tracks contain records that summarize the analysis results for complete event. Each record can span many video frames and has a start time, peak time, end time, duration, and an ID. You can use the ID to find other records that are related to the same event. The purpose of a result track is to provide a summary of the analysis results that is suitable to output from Media Server. Media Server does not generate a record in a result track until an event has finished, because these records represent an entire event from beginning to end.

  Example: A face detection result track contains a single record for each detected face. Each record has a different ID.

  Example: A face recognition result track contains zero or more records for each detected face (there can be multiple recognition results when there are several matches that exceed the recognition threshold). Face recognition results inherit their ID from the detected face, so all of the recognition results for the same detected face have the same ID.

- *ResultWithSource* tracks are similar to result tracks because the records represent complete events. The records are the same as records in the result track, except that each record also includes the video frame that produced the best analysis result. For example, when you run face recognition the video frame with the highest confidence score is added to the record. This frame corresponds to the "peak" timestamp.

- *Data* tracks contain records that correspond to a single analyzed frame. A data track can contain hundreds of records that relate to the same event. A data track can also contain multiple records that relate to the same video frame, because multiple events can occur at the same time.

  Example: A face detection data track contains at least one record for every analyzed frame in which a face appears. If a person remains in the scene for several seconds, this track could contain hundreds of records that identify the same face and have the same ID. If a video frame contains three faces, the face detection data track will contain three records with timestamps matching that frame, each with a different ID.

Media Server Guide at p. 95; *see also* https://www.microfocus.com/ documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/ Help/Content/Operations/Config_Overview_AnalysisTracks.htm?Highlight=%22f ollowing%20diagram%20shows%20how%20face%20detection%20creates%20rec ords%22.

91.     OpenText was provided with notice that it infringes the '746 Patent no later than February 24, 2023.  OpenText's knowledge of the '746 Patent, which

covers operating the Accused Products in their intended manner such that all limitations of the asserted claims of the '746 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products directly infringes the '746 Patent, or, at the very least, rendered OpenText willfully blind to such infringement.

92.     OpenText has, since at least as early as February 2023, known or been willfully blind to the fact that the third-party infringers' use, manufacture, sale, offer for sale, and/or importation of the Accused Products directly infringes the '746 Patent.

93.     With knowledge of or willful blindness to the fact that the third-party infringers' use, manufacture, sale, offer for sale, license and/or importation of the Accused Products in their intended manner such that all limitations of the asserted claims of the '746 Patent are met directly infringes the '746 Patent, OpenText has actively encouraged the third-party infringers to directly infringe the '746 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the accused products by, for example: marketing the Accused Products with facial recognition and feature extraction capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the facial recognition

and feature extraction functionalities; and providing technical assistance to the third-party infringers during their continued use of the Accused Products such as by, for example, publishing instructional information on the OpenText websites (including, without limitation, the knowledge center, instructional videos and on the OpenText branded website) directing and encouraging third-party infringers how to make and use the facial recognition and feature extraction features of the Accused Products.

94.    OpenText induces third-party infringers to infringe the asserted claims of the '746 Patent by directing or encouraging them to operate, make, sell, offer to sell, license, and/or import the Accused Products which satisfy all limitations of the asserted claims of the '746 Patent.  OpenText advertises and promotes the facial recognition and feature extraction features of the Accused Products and encourages the third-party infringers to operate them in an infringing manner. OpenText provides technical assistance directing and instructing third parties how to operate the Accused Products by, for example, publishing instructional materials, videos, knowledge center resources, how-to guides, troubleshooting, manuals, and user guides.

95.    In response, the third-party infringers acquire, make, sell, offer to sell,

license, operate, and/or import the Accused Products in an infringing manner.

96.     OpenText specifically intends to induce, and did induce, the third-party infringers to infringe the asserted claims of the '746 Patent, and OpenText knew of or was willfully blind to such infringement. OpenText advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the facial recognition and feature extraction features of the Accused Products.  Having known or been willfully blind to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of asserted claims of the '746 Patent were met directly infringed the '746 Patent, OpenText actively encouraged and induced the third-party infringers to directly infringe the '746 Patent by making, using, testing, selling, offering for sale, importing and/or licensing said Accused Products, and by, for example: marketing the Accused Products to the third-party infringers; supporting and managing the third-party infringers' use of the Accused Products; and providing technical assistance to the third-party infringers during their continued use of the Accused Products by, for example, publishing the following instructional information on its website directing third-party infringers how to

make and use the Accused Products to infringe the asserted claims of the '746 Patent.

97.    OpenText has induced and continues to induce infringement of the asserted claims of the '746 Patent under 35 U.S.C. § 271(b).

98.    OpenText has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the Accused Products that are especially made and adapted—and specifically intended by OpenText—to be used as components and material parts of the inventions covered by the '746 Patent.  The Accused Products include facial recognition and feature extraction features identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the accused products.

99.    OpenText also knew that the accused products are operated in a manner that practices each asserted claim of the '746 Patent.

100.   The facial recognition and feature extraction features are specially made and adapted to infringe the asserted claims of the '746 Patent.

101.   The facial recognition and feature extraction features are not a staple

article or commodity of commerce, and, because the functionality was designed to work with the Accused Products solely in a manner that is covered by the '746 Patent, it has no substantial non-infringing use. At least by MPV's notice of OpenText's infringement, based upon the foregoing facts, OpenText knew of or was willfully blind to the fact that such facial recognition and feature extraction functionality was, in fact, used as intended and as especially made and adapted in the Accused Products in a manner that is covered by the '746 Patent.

102.    OpenText has contributorily infringed and continues to contributorily infringe the asserted claims of the '746 Patent under 35 U.S.C. § 271(c).

103.    OpenText's continuing acts of infringement of the '746 Patent since notice and since this complaint was filed are, therefore, carried out with knowledge of the asserted claims of the '746 Patent and how the Accused Products infringe them.  Rather than take a license to the '746 Patent, OpenText's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

104.    OpenText's acts of direct and indirect infringement have caused and continue to cause damage to MPV for which MPV is entitled to recover damages

sustained as a result of OpenText's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

**COUNT 3**
**INFRINGEMENT OF U.S. PATENT NO. 8,665,345**

105.   MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

106.   MPV is the owner, by assignment, of U.S. Patent No. 8,665,345.  The '345 Patent was issued by the United States Patent and Trademark Office on March 4, 2014.

107.   As the owner of the '345 Patent, MPV holds all substantial rights in and under the '345 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

108.   The '345 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

109.   OpenText has infringed, and continues to infringe, at least claim 16 of the '345 Patent by making, using (including its own testing), offering to sell, selling, distributing, licensing, and/or importing the Accused Products and all similar products that infringe the '345 Patent without authorization or license as

exemplified below.

110. The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '345 Patent and feature structures and/or functionality as shown below.

111. OpenText has used and tested the Accused Products in the United States.

112. OpenText has infringed and continues to infringe the '345 Patent.

113. OpenText's activities were without authority of license under the '345 Patent.

114. OpenText's users, customers, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using the Accused Products according to their normal and intended use.

115. The Accused Products satisfy each and every limitation of each asserted claim of the '345 Patent either literally or under the doctrine of equivalents.

116. Claim 16 recites an embodiment of the claimed subject matter:

A method comprising:

receiving a video sequence including a time sequence of image

frames;

specifying reference data separate from a reference in the received

video sequence, wherein the reference data indicates a

feature of interest, and wherein the reference data includes

information specifying a desired characteristic of the image

frames;

using a data processor to automatically analyze the image frames

using a feature recognition algorithm to identify a subset of

the image frames that contain a feature of interest and have

the desired characteristic;

forming a video summary including fewer than all of the image

frames in the video sequence, wherein the video summary

includes at least part of the identified subset of image frames

containing the feature of interest and having the desired

characteristic; and

storing a representation of the video summary in a processor-

accessible storage memory.

117.   The Accused Products perform a method that includes receiving a video sequence including a time sequence of image frames.  For example, the Media Server receives live video images (*e.g.,* "video sequence including a time sequence of image frames") through video of IP streams.



Media Server Guide at p. 22; *See also* Media Server Help (*available at*

https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Getting_Started/Introduction/Architecture.htm).

## Ingest Media

*Ingestion* is the process of bringing media into Media Server so that it can be processed and analyzed. Media Server can ingest the following media:

- image files.
- office documents such as PDF files that contain embedded images.
- video files.
- video from IP streams. Many devices, for example IP cameras, network encoders, and IPTV devices can produce IP streams.
- video from cameras and third-party video management systems.

Media Server Guide at p. 20; Media Sever Help (*available at* https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Getting_Started/Introduction/MediaServer.htm).

118.    In normal operation, the Accused Products specify reference data separate from a reference in the received video sequence, wherein the reference data indicates a feature of interest, and wherein the reference data includes information specifying a desired characteristic of the image frames.  For example, the Media Server specifies the type of analysis engine to use (*e.g.,* "reference data") separate from a reference in the received video wherein the type of analysis engine indicates a feature of interest (*e.g.,* face, car, truck, etc.) and wherein the type of analysis engine includes information specifying a desired characteristic

(*e.g.,* when an object crosses a tripwire or enters an area) of the image frames.

## Introduction to Scene Analysis

Scene analysis recognizes events in video that you consider important. Typical examples of objects and events you might want to detect in CCTV footage include:

- A vehicle breaking traffic laws, for example by running a red light.
- Abandoned bags.
- Abandoned vehicles.
- Traffic congestion.
- Zone breaches and trip wire events, for example a person entering a restricted area.

NOTE: Media Server 12.5 and later support surveillance configurations based on object class recognition, which provides more accurate object detection and tracking, and is easier to configure. For more information, see Object Class Recognition for Surveillance, on page 188.

Media Server Guide at p. 232.; https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Operations/Analyze/SceneAnalysis_Intro.htm.



https://www.youtube.com/watch?v=XjKjIxlKy9I&list=PLlUdEXI83_Xoq5Fe2iUnY8fjV9PuX61FA&t=126s.



*Id.*

119.  The Accused Products perform a method that uses a data processor to automatically analyze the image frames using a feature recognition algorithm to identify a subset of the image frames that contain a feature of interest and have the desired characteristic.  For example, the Media Server uses a data processor to analyze the image frames using a feature recognition algorithm (*e.g.,* faces), to identify those image frames (*e.g.,* "a subset of the image frames") that contain a feature of interest with the desired characteristic.



Media Server Guide at p. 22; *See also* Media Server Help (*available at* https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Getting_Started/Introduction/Architecture.htm).

## Type

The analysis engine to use. Set this parameter to one of the following values:

| | |
|---|---|
| AlertPath | Generates an alert when an object follows a specified path through the scene. |
| AlertRegion | Generate an alert when an object is present within a specified region for a specified amount of time. |
| AlertStationary | Generate an alert when an object is stationary for a specified amount of time. |
| AlertTripWires | Generate an alert when an object crosses a tripwire. |
| AudioCategorize | Identify and classify audio segments, for example as "speech", "silence", "noise", or "music". |
| AudioMatch | Recognize known audio clips in ingested media. |
| Barcode | Detect and read barcodes. |
| Clothing | Provides the location of the clothing worn by a person whose face has been detected. |
| ColorCluster | Determine the dominant colors in images or video frames. |
| FaceDetect | Detect faces |
| Demographics | Obtain demographic information such as age, gender, and ethnicity for detected faces |
| FaceRecognize | Run face recognition on detected faces. |
| FaceState | Obtain additional information, such as facial expression, about detected faces. |
| ImageClassification | Classify images. |
| ImageComparison | Identify which parts of an image have changed, when compared to an original image that is stored in the training database. |
| ImageHash | Generate a hash that describes the approximate color distribution of an image or video frame. |
| Keyframe | Identify keyframes |
| LanguageID | Identify the language of speech. |
| NewsSegmentation | Identifies the times at which news stories start and finish. |
| NumberPlate | Detect and read license plates on vehicles. |
| ObjectClassRecognition | Recognize objects that belong to known classes. |
| ObjectRecognition | Recognize known objects. |

https://www.microfocus.com/documentation/idol/IDOL_12_12/MediaServer_12.12_Documentation/Help/Content/Configuration/Analysis/Type.htm.; *see also* https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Configuration/Analysis/Type.htm?Highlight=%22Recognize%20known%20objects%22.

120.    In normal operation, the Accused Products perform a method that includes forming a video summary including fewer than all of the image frames in the video sequence, wherein the video summary includes at least part of the

identified subset of image frames containing the feature of interest and having the desired characteristic.  For example, the Meda Server forms records (*i.e.,* "a video summary including fewer than all of the image frames") wherein the records include at least those frames (*e.g.,* "identified subset of image frames") that contain the detected face and have the desired characteristics specified in the event data.



Media Server Guide at p. 96; Media Server Help (*available at* https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Operations/Config_Overview_AnalysisTracks.htm?Highlight=%22following%20diagram%20shows%20how%20face%20detection%20creates%20records%22).

Analysis tasks can produce many different output tracks but, regardless of which track they belong to, records that relate to the same event always have the same ID.

- *Result* tracks contain records that summarize the analysis results for complete event. Each record can span many video frames and has a start time, peak time, end time, duration, and an ID. You can use the ID to find other records that are related to the same event. The purpose of a result track is to provide a summary of the analysis results that is suitable to output from Media Server. Media Server does not generate a record in a result track until an event has finished, because these records represent an entire event from beginning to end.

  Example: A face detection result track contains a single record for each detected face. Each record has a different ID.

  Example: A face recognition result track contains zero or more records for each detected face (there can be multiple recognition results when there are several matches that exceed the recognition threshold). Face recognition results inherit their ID from the detected face, so all of the recognition results for the same detected face have the same ID.

- *ResultWithSource* tracks are similar to result tracks because the records represent complete events. The records are the same as records in the result track, except that each record also includes the video frame that produced the best analysis result. For example, when you run face recognition the video frame with the highest confidence score is added to the record. This frame corresponds to the "peak" timestamp.

Media Server Guide at 95; Media Server Help (*available at* https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Operations/Config_Overview_AnalysisTracks.htm?Highlight=%22Analysis%20tasks%20can%20produce%20many%22).



https://www.youtube.com/watch?v=XjKjIxlKy9I&list=PLlUdEXI83_Xoq5Fe2iUnY8fjV9PuX61FA&t=126s

121.   In normal operation, the Accused Products perform a method that stores a representation of the video summary in a processor-accessible store media. For example, the Media Server stores the Output Tracks (*e.g.,* "a representation of the video summary") operations to the Connector Framework Server (*e.g.,* "processor-accessible storage memory") where it is indexed into the IDOL server.

## The IDOL Platform

Media Server is one of the components in the *Intelligent Data Operating Layer* (IDOL). You can use Media Server independently or as part of a larger IDOL system.

You can use Media Server independently by writing a custom application that communicates with Media Server. Media Server accepts commands over HTTP and returns responses in XML format. You can use the Autonomy Content Infrastructure (ACI) Client API to develop a custom application.

In a typical IDOL deployment, IDOL Connectors retrieve information from your data repositories for indexing into IDOL Content. You can configure IDOL NiFi Ingest or your Connector Framework Server (CFS) to send images and video to Media Server and request one or more analysis operations. Media Server returns the results of the analysis operations to NiFi Ingest or CFS, which enriches the documents being ingested.

Media Server Guide at 23.



For example, a repository might contain video clips that you want to search or categorize. You could configure NiFi Ingest to send the video to Media Server and request analysis such as face detection, face recognition, object recognition, keyframe extraction and optical character recognition. Media Server returns information about the video content to NiFi Ingest, which might perform additional operations, such as Eduction, before indexing the information into an IDOL index.

Media Server Guide at 24.

122. Media Server Help (*available at* https://www.microfocus.com/ documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/ Help/Content/Getting_Started/Introduction/IDOL.htm).

## Output Tracks

| Output track | Description | Output[1]▼ |
| --- | --- | --- |
| AlignedImageResult | Contains one record for each detected face. The records in this track include the identifier of the detected face and an image. The image is rotated so that the face is upright and is cropped around the person's head. You can pass this track to an image encoder to produce images of the detected faces. | No |
| Data | Contains one record, describing the analysis results, per detected face, per video frame. | No |
| DataWithSource | The same as the Data track, but each record also includes the source frame. This information can be passed to other analysis engines to run tasks such as face recognition or demographic analysis. | No |
| Result | Contains one record, describing the analysis results, for each detected face. When the same face appears in many consecutive frames, Media Server produces a single record. | Yes |
| ResultWithSource | The same as the Result track, but each record also includes the best source frame. | No |
| SegmentedResult | (Available only when processing video). The same as the Result track, except the duration of each record is limited by the parameter SegmentDuration. If a result exceeds the specified duration, Media Server begins a new record with the same ID. | Yes |
| SegmentedResultWithSource | (Available only when processing video). The same as the ResultWithSource track, except the duration of each record is limited by the parameter SegmentDuration. If a result exceeds the specified duration, Media Server begins a new record with the same ID. | No |
| Start | The same as the Data track, except it contains only the first record of each event. | No |
| End | The same as the Data track, except it contains only the last record of each event. | No |

https://www.microfocus.com/documentation/idol/IDOL_12_12/MediaServer_12.12_Documentation/Help/Content/Configuration/Analysis/Face/_Face.htm; *see also*

https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Configuration/Analysis/Face/_Face.htm.



https://www.youtube.com/watch?v=XjKjIxlKy9I&list=PLlUdEXI83_Xoq5Fe2iUnY8fjV9PuX61FA&t=126s.

123.    MPV notified OpenText that it infringes the '345 Patent no later than February 24, 2023.

124.    OpenText's knowledge of the '345 Patent, which covers operating the Accused Products in their intended manner such that all limitations of the asserted claims of the '345 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products directly infringes the '345 Patent, or, at the

very least, rendered OpenText willfully blind to such infringement.

125.   With notice, OpenText has known or been willfully blind to the fact that the third-party infringers' use, manufacture, sale, offer for sale, license, and/or importation of the Accused Products directly infringes the '345 Patent.

126.   With knowledge of or willful blindness to the fact that the third-party infringers' use, use, manufacture, sale, offer for sale, license, and/or importation of the Accused Products in their intended manner such that all limitations of the asserted claims of the '345 Patent are met directly infringes the '345 Patent, OpenText has actively encouraged the third-party infringers to directly infringe the '345 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the accused products by, for example: marketing the Accused Products with facial recognition and feature extraction capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the OpenText facial recognition and feature extraction functionalities; and providing technical assistance to the third-party infringers during their continued use of the Accused Products such as by, for example, publishing instructional information on the OpenText websites (including, without limitation, the knowledge center, instructional videos and on the OpenText branded website) directing and

encouraging third-party infringers how to make and use the facial recognition and feature extraction features of the Accused Products.

127.   OpenText induces the third-party infringers to infringe the asserted claims of the '345 Patent by directing or encouraging them to operate, use, manufacture, sale, offer for sale, license, and/or importation of the Accused Products which satisfy all limitations of the asserted claims of the '345 Patent. OpenText advertises and promotes the facial recognition and feature extraction features of the Accused Products and encourages the third-party infringers to operate them in an infringing manner. OpenText provides technical assistance directing and instructing third parties how to operate the Accused Products by, for example, publishing instructional materials, videos, knowledge center resources, how-to guides, troubleshooting, manuals, and user guides.

128.   In response, the third-party infringers acquire and operate the Accused Products in an infringing manner.

129.   OpenText specifically intends to induce, and did induce, the third-party infringers to infringe the asserted claims of the '345 Patent, and OpenText knew of or was willfully blind to such infringement. OpenText advised, encouraged, and/or aided the third-party infringers to engage in direct

infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the facial recognition and feature extraction features of the Accused Products.  Having known or been willfully blind to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of asserted claims of the '345 Patent were met directly infringed the '345 Patent, OpenText actively encouraged and induced the third-party infringers to directly infringe the '345 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the Accused Products, and by, for example: marketing the Accused Products to the third-party infringers; supporting and managing the third-party infringers' use of the Accused Products; and providing technical assistance to the third-party infringers during their continued use of the Accused Products by publishing the following instructional information and directing third-party infringers how to make and use the Accused Products to infringe the asserted claims of the '345 Patent.

130.   Based upon the foregoing facts, among other things, OpenText has induced and continues to induce infringement of the asserted claims of the '345 Patent under 35 U.S.C. § 271(b).

131.   OpenText has sold, provided and/or licensed to the third-party

infringers and continues to sell, provide and/or license the Accused Products that are especially made and adapted—and specifically intended by OpenText—to be used as components and material parts of the inventions covered by the '345 Patent.  For example, the Accused Products include facial recognition and feature extraction features identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the accused products.

132.   OpenText also knew that the accused products are operated in a manner that practices each asserted claim of the '345 Patent.

133.   The facial recognition and feature extraction features are especially made and adapted to infringe the asserted claims of the '345 Patent.

134.   The facial recognition and feature extraction features are not a staple article or commodity of commerce, and, because the functionality was designed to work with the Accused Products solely in a manner that is covered by the '345 Patent, it has no substantial non-infringing use. At least by MPV's notice of OpenText's infringement, OpenText knew of or was willfully blind to the fact that the Accused Products feature functionality that was especially made and adapted

for use that infringes the '345 Patent.

135.    OpenText has contributorily infringed and continues to contributorily infringe the asserted claims of the '345 Patent under 35 U.S.C. § 271(c).

136.    OpenText's continuing acts of infringement of the '345 Patent are carried out with knowledge of the asserted claims of the '345 Patent and how the Accused Products infringe them.  Rather than take a license to the '345 Patent, OpenText's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).

137.    OpenText's acts of direct and indirect infringement have caused and continue to cause damage to MPV for which MPV is entitled to recover damages sustained as a result of OpenText's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 4
## INFRINGEMENT OF U.S. PATENT NO. 9,013,604

138.    MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

139.    MPV is the owner, by assignment, of U.S. Patent No. 9,013,604.  The

'604 Patent was issued by the United States Patent and Trademark Office on April 21, 2015.

140.   As the owner of the '604 Patent, MPV holds all substantial rights in and under the '604 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

141.   The '604 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

142.   OpenText has infringed, and continues to infringe, at least claim 1 of the '604 Patent by making, using, offering to sell, selling, distributing, licensing, and/or importing Accused Products and all similar products that infringe the '604 Patent without authorization or license as exemplified below.

143.   The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '604 Patent and feature structure and/or functionality comprising the steps noted above.

144.   OpenText has used and tested the Accused Products in the United States.

145.   OpenText has infringed and continues to infringe the '604 Patent.

146.   OpenText's activities were without authority or license.

147.   OpenText's users, customers, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using the Accused Products according to their normal and intended use.

148.   The Accused Products meet each and every limitation of each asserted claim of the '345 Patent either literally or under the doctrine of equivalents.

149.   Claim 1 recites an embodiment of the claimed subject matter:

A method comprising:

receiving a designation regarding a reference image, wherein the reference image contains a particular person;

analyzing, using a processing system, image frames to identify a subset of the image frames that contain the particular person;

forming, using the processing system, a summary including fewer than all of the image frames, wherein the summary includes at least part of the identified subset of image frames including the particular person;

storing the summary in storage memory as a separate summary file.

150.   In normal operation, the Accused Products perform a method that receives a designation regarding a reference image, wherein the reference image contains a particular person.  For example, the Media Server receives a designation with respect to a reference image containing a particular person (*e.g.,* faces added during training).

## Introduction

*Face Detection* detects faces and returns their location.

*Face Recognition* identifies people by comparing detected faces to faces in your training database.

## Train Media Server to Recognize Faces

To run face recognition you must train Media Server by providing images of people that you want to identify. When you run face recognition, Media Server compares the faces it detects in the image or video to the faces that you added during training.

Media Server Guide at p. 345, 146; Media Server Help (*available at* https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Operations/Analyze/Face_overview.htm; https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Training/Face_Introduction.htm?Highlight=face%20detection%20detects%20faces).

151.   The Accused Products analyze, using a processing system, image frames to identify a subset of the image frames that contain the particular person. For example, the Media Server automatically analyzes, using the analysis engines,

(*e.g.,* "processing system"), videos that contain a recognized person (*e.g.,* "particular person").



Media Server Guide at 146; Media Server Help (*available at* https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/ MediaServer_25.2_Documentation/Help/Content/Training/Face_Introduction.htm? Highlight=face%20detection%20detects%20faces).

The following diagram shows how face detection creates records (represented by rectangles) when a face appears in a video.

Media Server Guide at p. 96; Media Server Help (*available at* https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Operations/Config_Overview_AnalysisTracks.htm?Highlight=%22following%20diagram%20shows%20how%20face%20detection%20creates%20records%22).

152.    The Accused Products form, using the processing system, a summary including fewer than all of the image frames, wherein the summary includes at least part of the identified subset of image frames including the particular person. For example, the Accused Products form a record (*e.g.,* a summary) using the Media Server (*e.g.,* "processing system") that includes a subset of video frames where the detected person is present.

The following diagram shows how face detection creates records (represented by rectangles) when a face appears in a video.

153.    Media Server Guide at p. 96; Media Server Help (*available at* https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Operations/Config_Overview_AnalysisTracks.htm?Highlight=%22following%20diagram%20shows%20how%20face%20detection%20creates%20records%22).

### Output Tracks

| Output track | Description | Output |
|---|---|---|
| AlignedImageResult | Contains one record for each detected face. The records in this track include the identifier of the detected face and an image. The image is rotated so that the face is upright and is cropped around the person's head. You can pass this track to an image encoder to produce images of the detected faces. | No |
| Data | Contains one record, describing the analysis results, per detected face, per video frame. | No |
| DataWithSource | The same as the Data track, but each record also includes the source frame. This information can be passed to other analysis engines to run tasks such as face recognition or demographic analysis. | No |
| Result | Contains one record, describing the analysis results, for each detected face. When the same face appears in many consecutive frames, Media Server produces a single record. | Yes |
| ResultWithSource | The same as the Result track, but each record also includes the best source frame. | No |
| SegmentedResult | (Available only when processing video). The same as the Result track, except the duration of each record is limited by the parameter SegmentDuration. If a result exceeds the specified duration, Media Server begins a new record with the same ID. | Yes |
| SegmentedResultWithSource | (Available only when processing video). The same as the ResultWithSource track, except the duration of each record is limited by the parameter SegmentDuration. If a result exceeds the specified duration, Media Server begins a new record with the same ID. | No |
| Start | The same as the Data track, except it contains only the first record of each event. | No |
| End | The same as the Data track, except it contains only the last record of each event. | No |

https://www.microfocus.com/documentation/idol/IDOL_12_12/MediaServer_12.1

2_Documentation/Help/Content/Configuration/Analysis/Face/_Face.htm.

> Analysis tasks can produce many different output tracks but, regardless of which track they belong to, records that relate to the same event always have the same ID.
>
> • *Result* tracks contain records that summarize the analysis results for complete event. Each record can span many video frames and has a start time, peak time, end time, duration, and an ID. You can use the ID to find other records that are related to the same event. The purpose of a result track is to provide a summary of the analysis results that is suitable to output from Media Server. Media Server does not generate a record in a result track until an event has finished, because these records represent an entire event from beginning to end.
>
> Example: A face detection result track contains a single record for each detected face. Each record has a different ID.
>
> Example: A face recognition result track contains zero or more records for each detected face (there can be multiple recognition results when there are several matches that exceed the recognition threshold). Face recognition results inherit their ID from the detected face, so all of the recognition results for the same detected face have the same ID.
>
> • *ResultWithSource* tracks are similar to result tracks because the records represent complete events. The records are the same as records in the result track, except that each record also includes the video frame that produced the best analysis result. For example, when you run face recognition the video frame with the highest confidence score is added to the record. This frame corresponds to the "peak" timestamp.

Media Server Guide at 95; Media Server Help (*available at* https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Operations/Config_Overview_AnalysisTracks.htm?Highlight=%22Analysis%20tasks%20can%20produce%20many%22).

154.    The Accused Products store the summary in storage memory as a separate file.  For example, the Media Server stores the results of analysis (*e.g.,* a separate summary file) operations to the Connector Framework Server (*e.g.,* "storage memory") where it is indexed into the IDOL server.

## The IDOL Platform

Media Server is one of the components in the *Intelligent Data Operating Layer* (IDOL). You can use Media Server independently or as part of a larger IDOL system.

You can use Media Server independently by writing a custom application that communicates with Media Server. Media Server accepts commands over HTTP and returns responses in XML format. You can use the Autonomy Content Infrastructure (ACI) Client API to develop a custom application.

In a typical IDOL deployment, IDOL Connectors retrieve information from your data repositories for indexing into IDOL Content. You can configure IDOL NiFi Ingest or your Connector Framework Server (CFS) to send images and video to Media Server and request one or more analysis operations. Media Server returns the results of the analysis operations to NiFi Ingest or CFS, which enriches the documents being ingested.

Media Server Guide at 23.



For example, a repository might contain video clips that you want to search or categorize. You could configure NiFi Ingest to send the video to Media Server and request analysis such as face detection, face recognition, object recognition, keyframe extraction and optical character recognition. Media Server returns information about the video content to NiFi Ingest, which might perform additional operations, such as Eduction, before indexing the information into an IDOL index.

Media Server Guide at 24.

## The Knowledge Discovery Platform

Media Server is one of the components of Knowledge Discovery. You can use Media Server independently or as part of a larger Knowledge Discovery system.

You can use Media Server independently by writing a custom application that communicates with Media Server. Media Server accepts commands over HTTP and returns responses in XML format. You can use the Autonomy Content Infrastructure (ACI) Client API to develop a custom application.

In a typical Knowledge Discovery deployment, connectors retrieve information from your data repositories for indexing into a Content component. You can configure your ingest pipeline to send images and video to Media Server and request one or more analysis operations. Media Server returns the results of the analysis operations, which enriches the documents being ingested.

For example, a repository might contain video clips that you want to search or categorize. You could configure NiFi Ingest to send the video to Media Server and request analysis such as face detection, face recognition, object recognition, keyframe extraction and optical character recognition. Media Server returns information about the video content to NiFi Ingest, which might perform additional operations, such as Named Entity Recognition, before indexing the information into your text index.



Media Server Help (*available at* https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Getting_Started/Introduction/IDOL.htm).

## Output Tracks

| Output track | Description | Output[1] ▾ |
|---|---|---|
| AlignedImageResult | Contains one record for each detected face. The records in this track include the identifier of the detected face and an image. The image is rotated so that the face is upright and is cropped around the person's head. You can pass this track to an image encoder to produce images of the detected faces. | No |
| Data | Contains one record, describing the analysis results, per detected face, per video frame. | No |
| DataWithSource | The same as the Data track, but each record also includes the source frame. This information can be passed to other analysis engines to run tasks such as face recognition or demographic analysis. | No |
| Result | Contains one record, describing the analysis results, for each detected face. When the same face appears in many consecutive frames, Media Server produces a single result. | Yes |
| ResultWithSource | The same as the Result track, but each record also includes the best source frame. | No |
| SegmentedResult | (Available only when processing video). The same as the Result track, except the duration of each record is limited by the parameter SegmentDuration. If a result exceeds the specified duration, Media Server begins a new record with the same ID. | Yes |
| SegmentedResultWithSource | (Available only when processing video). The same as the ResultWithSource track, except the duration of each record is limited by the parameter SegmentDuration. If a result exceeds the specified duration, Media Server begins a new record with the same ID. | No |
| Start | The same as the Data track, except it contains only the first record of each event. | No |
| End | The same as the Data track, except it contains only the last record of each event. | No |

https://www.microfocus.com/documentation/idol/IDOL_12_12/MediaServer_12.12_Documentation/Help/Content/Configuration/Analysis/Face/_Face.htm; *see also* https://www.microfocus.com/documentation/idol/knowledge-discovery-25.2/MediaServer_25.2_Documentation/Help/Content/Configuration/Analysis/Face/_Face.htm.

155.   MPV notified OpenText that it infringed the '604 Patent no later than February 24, 2023.

156.   OpenText's knowledge of the '604 Patent, which covers operating the Accused Products in their intended manner such that all limitations of the asserted claims of the '604 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products directly infringes the '604 Patent, or, at the very least, rendered OpenText willfully blind to such infringement.

157.   OpenText has, since at least as early as February 2023, known or been willfully blind to the fact that the third-party infringers' use of the Accused Products directly infringes the '604 Patent.

158.   With knowledge of or willful blindness to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of the asserted claims of the '604 Patent are met directly infringes the '604 Patent, OpenText has actively encouraged the third-party infringers to directly infringe the '604 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the Accused Products by, for example: marketing the Accused Products with facial recognition and feature extraction capabilities to the third-party infringers; supporting and managing the third-party infringers' use of

the OpenText facial recognition and feature extraction functionalities; and providing technical assistance to the third-party infringers during their continued use of the Accused Products such as by, for example, publishing instructional information on the OpenText websites (including, without limitation, the knowledge center, instructional videos and on the OpenText branded website) directing and encouraging third-party infringers how to make and use the facial recognition and feature extraction features of the Accused Products.

159. OpenText induces third-party infringers to infringe the asserted claims of the '604 Patent by directing or encouraging them to operate the Accused Products which satisfy all limitations of the asserted claims of the '604 Patent. OpenText advertises and promotes the facial recognition and feature extraction features of the Accused Products and encourages the third-party infringers to operate them in an infringing manner. OpenText provides technical assistance directing and instructing third parties how to operate the Accused Products by, for example, publishing instructional materials, videos, knowledge center resources, how-to guides, troubleshooting, manuals, and user guides.

160. In response, the third-party infringers acquire and operate the Accused Products in an infringing manner.

161.    OpenText specifically intends to induce, and did induce, the third-party infringers to infringe the asserted claims of the '604 Patent, and OpenText knew of or was willfully blind to such infringement. OpenText advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the wireless features of the Accused Products.  Having known or been willfully blind to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of asserted claims of the '604 Patent were met directly infringed the '604 Patent, OpenText actively encouraged and induced the third-party infringers to directly infringe the '604 Patent by making, using, testing, selling, offering for sale, importing and/or licensing said Accused Products, and by, for example: marketing the Accused Products to the third-party infringers; supporting and managing the third-party infringers' use of the Accused Products; and providing technical assistance to the third-party infringers during their continued use of the Accused Products by, for example, publishing the following instructional information directing third-party infringers how to make and use the Accused Products to infringe the asserted claims of the '604 Patent.

162.   OpenText has induced and continues to induce infringement of the asserted claims of the '604 Patent under 35 U.S.C. § 271(b).

163.   OpenText has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the Accused Products that are especially made and adapted—and specifically intended by OpenText—to be used as components and material parts of the inventions covered by the '604 Patent. For example, the Accused Products include facial recognition and feature extraction features identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the accused products.

164.   OpenText also knew and intended that the Accused Products would be operated in a manner consistent with normal and intended use, which use practices the asserted claims of the '604 Patent.

165.   The wireless features are specially made and adapted to infringe the asserted claims of the '604 Patent.

166.   The facial recognition and feature extraction features are not a staple article or commodity of commerce, and, because these functionalities were

designed to work with the Accused Products solely in a manner that is covered by the '604 Patent, they have no substantial non-infringing use. At least by MPV's notice of OpenText's infringement, OpenText knew of or was willfully blind to the fact that such functionalities infringe and were especially made and adapted for use that infringes the '604 Patent and they were in fact used to infringe.

167.    OpenText has contributorily infringed and continues to contributorily infringe the asserted claims of the '604 Patent under 35 U.S.C. § 271(c).

168.    Upon information and belief, OpenText's acts of infringement of the '604 Patent continue since notice and since this complaint was filed and are, therefore, carried out with knowledge of the asserted claims of the '604 Patent and how the Accused Products infringe them.  Rather than take a license to the '604 Patent, OpenText's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

169.    OpenText's acts of direct and indirect infringement have caused and continue to cause damage to MPV for which MPV is entitled to recover damages sustained as a result of OpenText's infringing acts in an amount subject to proof at

trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

**NOTICE**
**NOTICE OF REQUIREMENT OF LITIGATION HOLD**

170.   OpenText is hereby notified it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that OpenText knows, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereafter collectively referred to as "Potential Evidence").

171.   As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings

and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored.  These sources may also include any personal electronic, digital, and storage devices of any and all of OpenText's agents, resellers, distributors or employees if OpenText's electronically stored information resides there.

172.   OpenText is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to OpenText's claims and/or defenses.  To avoid such a result, OpenText's preservation duties include, but are not limited to, the requirement that OpenText immediately notify its agents, distributors, and employees to halt and/or supervise the auto-delete functions of

OpenText's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## JURY DEMAND

MPV hereby demands a trial by jury on all claims, issues, and damages so triable.

## PRAYER FOR RELIEF

MPV prays for the following relief:

a. That OpenText be summoned to appear and answer;

b. That the Court enter judgment that OpenText has infringed the '311, '746, '345, and '604 Patents.

c. That the Court grant MPV judgment against OpenText for all actual, consequential, special, punitive, increased, and/or statutory damages, including, if necessary, an accounting of all damages; pre- and post-judgment interest as allowed by law; and reasonable attorney's fees, costs, and expenses incurred in this action;

d. That OpenText's infringement be found to have been willful;

e. That this case be found to be exceptional under 35 U.S.C. § 285; and

f. That MPV be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated:  May 12, 2025                    Respectfully submitted,


By: Cabrach J. Connor
Cab@CLandS.com
Texas Bar No. 24036390
Jennifer Tatum Lee
Jennifer@CLandS.com
Texas Bar No. 24046950
John M. Shumaker
John@CLandS.com
Texas Bar No. 24033069

**CONNOR LEE & SHUMAKER PLLC**
609 Castle Ridge Road, Suite 450
Austin, Texas 78746
512.646.2060 Telephone
888.387.1134 Facsimile